```
          UNITED STATES DISTRICT COURT
           DISTRICT OF NEW HAMPSHIRE
```

United States of America

    v.                                                Criminal No. 13-cr-98/01-JL
                                                                      Opinion No. 2015 DNH 039P

Olawaseun Adekoya


**MEMORANDUM ORDER**

This case raises a question as to the proof required to secure a conviction for bank fraud under 18 U.S.C. § 1344.  The defendant, Olawaseun Adekoya, was among the targets of a sting operation conducted by the United States Secret Service.  A Secret Service agent, impersonating as an associate of Adekoya's, wrote an e-mail to Adekoya inviting him to participate in an "ATM cashout," a scheme using fraudulently manufactured ATM cards to make unauthorized withdrawals from actual bank accounts.  Adekoya took the bait, and recruited four other people to assist him. Those four traveled from Georgia to New Hampshire, where they retrieved 200 plastic cards, which they had been led to believe were encoded to access ATMs, from a prearranged drop point. Unbeknownst to them--and to Adekoya--the cards, which had been supplied by the Secret Service, were blank and incapable of actually withdrawing any cash.  All four were caught red-handed when they attempted to use the cards; Adekoya was arrested the next day.

Adekoya was tried in this court on charges of bank fraud, see 18 U.S.C. § 1344, and conspiracy to commit bank fraud, see id. §§ 371 & 1344.  After the prosecution closed its evidence, Adekoya orally moved for a judgment of acquittal on both counts.  See Fed. R. Crim. P. 29(a).  He argued, among other things, that a bank fraud conviction requires proof by the prosecution that a bank was actually victimized or exposed to a risk of loss.  Because the cashout had been devised by the Secret Service and the plastic cards were incapable of actually withdrawing funds, Adekoya asserted, the prosecution had failed to prove that any bank was victimized, or that such a risk existed.  The court denied the motion in part, but reserved decision on Adekoya's "actual victimization or risk of loss" argument on the bank fraud count.  See Fed. R. Crim. P. 29(b).  After the jury returned a verdict finding Adekoya guilty on both counts, the court received supplemental written briefing from the parties regarding that argument.  Having reviewed that briefing, the court now denies Adekoya's motion.

As explained below, although Adekoya relies on cases stating that the prosecution must prove that a bank "was victimized or exposed to a risk of loss" in order to secure a conviction under § 1344, see, e.g., United States v. Brandon, 17 F.3d 409, 427 (1st Cir. 1994), he misinterprets those cases.  They do not mean, as Adekoya argues, that a defendant cannot be convicted of bank

fraud where, as here, his scheme to defraud has no hope of succeeding, and thus does not put a bank at actual risk of loss. To the contrary, those cases stand for the proposition that a bank fraud conviction requires proof of a scheme--whether or not it is actually capable of success--that would, if realized, victimize a bank (as opposed to a third party) or put it at risk of loss. Because the evidence presented at trial proved as much, Adekoya's motion is denied.

I. **Background**[1]

The case against Adekoya resulted from a United States Secret Service investigation into a wholly different person, Hieu Minh Ngo. The Secret Service arrested Ngo for selling personally identifiable information ("PII") belonging to other individuals, and Ngo, facing a lengthy term of imprisonment, agreed to assist in further investigations into the people who had purchased PII from him. To that end, Ngo authorized the Secret Service to both access and use the e-mail account he had used to correspond with his "customers." In the account, the Secret Service discovered correspondence between Ngo and Adekoya, in which Adekoya sought to purchase the Social Security numbers of numerous individuals.

---

[1]This summary, which briefly reviews the facts relevant to Adekoya's Rule 29 motion, examines the evidence presented at trial "in the light most favorable to the government, taking all reasonable inferences in its favor." United States v. Pagán-Ferrer, 736 F.3d 573, 590 (1st Cir. 2013). A more complete discussion of the background of this case can be found in the court's opinion denying Adekoya's motion to suppress. See United States v. Adekoya, –- F. Supp. 3d –-, 2014 WL 5844239, *2-3 (D.N.H. Nov. 12, 2014).

Using this information, the government obtained an indictment against, and an arrest warrant for, Adekoya in this court.

The Secret Service was faced with something of a quandary, however. In his dealings with Ngo, Adekoya did not use his real name; the Secret Service had been able to identify him by tracing the IP address from which the correspondence with Ngo originated to Adekoya's residence in New Jersey. Suspecting that Adekoya might, in light of this state of affairs, attempt to claim that someone else had employed his IP address to correspond with Ngo, the Secret Service formulated a plan to prove beyond any doubt that it was, in fact, Adekoya on the other end of Ngo's e-mails.

A Secret Service agent, impersonating Ngo, wrote an e-mail from Ngo's account to one of the accounts that originated from Adekoya's IP address, inviting the recipient to participate in an ATM cashout in New Hampshire. (As already mentioned, that type of scheme involves using fraudulently manufactured ATM cards to make withdrawals from legitimate bank accounts belonging to other people.) In extending this invitation, the agent hoped to lure Adekoya from his home in New Jersey to New Hampshire, where he would be arrested--and his ability to disclaim responsibility for the correspondence with Ngo would be eliminated.

Adekoya readily accepted the invitation, and he and the agent masquerading as Ngo proceeded to hammer out the specifics of the plan through e-mails and instant messages. Adekoya would

assemble a group of people and travel with them to Manchester, New Hampshire on the evening of October 1, 2013. There, they would proceed to the front desk of a local hotel and retrieve a box left for them by "Ngo." That box would contain a list of twelve ATMs to be targeted, 200 plastic cards that would enable them to make withdrawals from those ATMs, and the PIN numbers to be used in conjunction with those cards. They would then make withdrawals totaling about $900,000--a portion of which they would keep, the other portion of which would go to "Ngo"--before returning home.

As planned, four individuals traveled from Atlanta, Georgia to Manchester, New Hampshire on the evening of October 1, 2013, and picked up the box containing the lists of ATMs, cards, and PIN numbers. In a departure from the plan discussed by "Ngo" and Adekoya, Adekoya was not among them. And, in a further departure from that plan, the 200 plastic cards that "Ngo" had provided could not be used to withdraw cash from the ATMs. That was, of course, the Secret Service's plan all along, but it was not apparent to Adekoya's co-conspirators, who continued on their way to the specified ATMs. All four were arrested in the early morning hours of October 2, 2013, while unsuccessfully attempting to make withdrawals using the cards.

Adekoya was arrested at his home the next day, after his co-conspirators implicated him in the scheme. Based upon the events

of October 1-2, 2013, he was charged with bank fraud, in violation of 18 U.S.C. § 1344, and conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 371 & 1344.[2]

## II.  Analysis

Adekoya asserts that the foregoing facts are insufficient to prove his guilt on the charge of bank fraud under 18 U.S.C. § 1344.  That statute provides for the punishment of

> [w]hoever knowingly executes, or attempts to execute, a scheme or artifice--
>
>> (1) to defraud a financial institution; or
>>
>> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises[.]

Adekoya's argument does not focus on the language of the statute itself.  It instead relies upon case law from both within and without this circuit to the effect that "the government must also establish that a federally insured bank . . . was victimized or exposed to a risk of loss by the scheme to defraud" in order to secure a conviction under the statute.  Brandon, 17 F.3d at 427 (citing United States v. Blackmon, 839 F.2d 900, 906 (2d Cir. 1988)); see also, e.g., United States v. Moran, 312 F.3d 480, 489 (1st Cir. 2002) ("[T]he bank need not be the immediate victim of

---

[2]After some pretrial wrangling, the government voluntarily chose not to pursue the charges against Adekoya set forth in the original indictment, which had been based on his attempts to purchase PII from Ngo.

the fraudulent scheme and need not have suffered actual loss so long as the requisite intent is established and the bank was exposed to a risk of loss."); United States v. Lemons, 941 F.2d 309, 315-16 (5th Cir. 1991) ("[T]he government had to prove . . . that at least one of the banks was at risk."). Because the plastic cards the Secret Service provided his co-conspirators as part of the sting operation "were incapable of withdrawing money from an ATM and were, in fact, nothing more than pieces of plastic," Adekoya says the prosecution has failed to carry its burden of showing that any bank was victimized, or even exposed to a risk of loss. The court does not agree with this reading of the case law.

Adekoya's argument takes that case law out of context. To explain that context, the court begins with the statute itself. As the disjunctive "or" between subsections (1) and (2) suggests, a defendant may commit the crime of bank fraud in either of two ways. See Loughrin v. United States, 134 S.Ct. 2384, 2391 (2014). A defendant violates the first of the two subsections by (1) engaging in a scheme or artifice to defraud (2) a federally insured financial institution, and (3) doing so knowingly and with the intent to defraud the financial institution. See United States v. Benjamin, 252 F.3d 1, 5 (1st Cir. 2001) (quoting Brandon, 17 F.3d at 424). The second subsection, by contrast, is violated when the defendant (1) engages in a scheme or artifice

employing materially false and fraudulent pretenses to (2) obtain money or other property owned by, or under the custody or control of (3) a federally insured financial institution, and (4) does so knowingly.  See Benjamin, 252 F.3d at 5; see also United States v. Bah, — Fed. Appx. —, 2014 WL 5438380, *1 (4th Cir. Oct. 28, 2014) (discussing elements of offense post-Loughrin).

   A number of courts have recognized that if the statute, and the elements of the offenses it defines (and in particular the variant outlined in subsection (2)), are read broadly, they could encompass a wide variety of fraudulent schemes that only tangentially involve banks.[3]  By way of example, in one Seventh Circuit case, a jury convicted the defendant of bank fraud for submitting a fraudulent tax return to the IRS, depositing the resultant tax refund check into an account opened in the name of a nonexistent company, and writing checks on the account.  United States v. Davis, 989 F.2d 244, 246 (7th Cir. 1993).  Similarly, in a Second Circuit case--the very first appellate case, in fact, to have articulated the concept that a bank must be "victimized or exposed to a risk of loss" for § 1344 to apply--a jury convicted the defendants of bank fraud for their participation in a scheme in which unwitting victims were, by means of deception, induced to withdraw their own money from banks and turn it over

---

   [3]Throughout this order, the court uses the shorthand "bank" to refer to a federally insured financial institution, since that is the term used in the case law upon which Adekoya relies.

to the defendants.  Blackmon, 839 F.2d at 902-03.  In both cases, the courts noted that although no bank stood to lose any money or property as a result of the defendants' schemes, a broad reading of the statute would nonetheless encompass those schemes, which had either deceived banks or employed deception to obtain funds in bank custody.  Davis, 989 F.2d at 246; Blackmon, 839 F.2d at 904-05.

That broad reading, however, struck those courts (and others confronted with similar facts) as incorrect.  While this court is not typically inclined to look outside the text of a statute for its purpose, the Davis and Blackmon courts were not so reserved.  The purpose of the statute, both courts concluded, is not to protect third parties who are victimized by fraudsters and con artists in schemes utilizing banks in some way, but to protect federally insured financial institutions from those schemes, and, by so doing, protect the federal government's interest as an insurer of those institutions.  See Davis, 989 F.2d at 246-47; Blackmon, 839 F.2d at 905.  So, to distinguish the former type of case from the latter, those courts articulated the requirement on which Adekoya now rests his argument for acquittal, i.e., that a bank itself must be "victimized," Blackmon, 839 F.2d at 904, or "put at risk," Davis, 989 F.2d at 247, by the scheme.  As the Court of Appeals for the Third Circuit succinctly summarized:

> [W]here the bank is not the 'target of deception,' but rather an 'unwitting instrumentality,' there is the

>     additional concern that § 1344 may be applied in a
>     manner that reaches conduct that falls well beyond the
>     scope of what the statute was intended to regulate.
>     . . . [T]he deception of a bank as an incidental part
>     of a scheme primarily intended to bilk a bank customer
>     does not undermine the integrity of banking.  Thus, to
>     ensure that § 1344 [is] not applied to conduct falling
>     outside the scope of the bank fraud statute, we imposed
>     the additional requirement of proof of an intent to
>     cause a bank a loss or potential liability.

United States v. Leahy, 445 F.3d 634, 647 (3d Cir. 2006) (internal quotation marks and citations omitted; see also United States v. De La Mata, 266 F.3d 1275, 1298 (11th Cir. 2001) ("Our review of the cases reveals that courts apply the risk of loss analysis in determining whether a scheme [that is] primarily directed at a non-bank party can still give rise to bank fraud.").[4]

In short, then, when these (and other) cases remark that a conviction for bank fraud requires that a "bank was victimized or exposed to a risk of loss by the scheme to defraud," the idea they are communicating is that a defendant's scheme, if realized, must threaten to harm a <u>bank</u>--as opposed to some other, unrelated party--in some way, either directly or indirectly.  These cases do not graft onto the statute the additional requirement that

---

[4] Indeed, in the memorandum he submitted in support of his Rule 29 motion, Adekoya himself observes that "one reason that certain Courts required a showing of risk of loss, was to ensure that the fraud was directed at a bank, not at some third party victim that was not a financial institution."  Memo. in Supp. of Rule 29 Mot. (document no. 103) at 6, ¶ 20 (citing Blackmon, 839 F.2d at 904).  The remainder of the memorandum does not identify any other potential reason for those courts' holdings, nor does it comment upon (or even acknowledge) the significance of this reason.

Adekoya seems to claim that they do, i.e., that the defendant's scheme actually must be <u>capable</u> of victimizing a bank or exposing it to a risk of loss. And a survey of the numerous cases Adekoya cites makes this clear: not a single one holds that a conviction under § 1344 cannot stand because the defendant's scheme did not create a risk of loss at all, but several overturn convictions under § 1344 because the risk of loss from the defendant's scheme fell on a third party rather than a bank. See, e.g., United States v. Staples, 435 F.3d 860, 867 (8th Cir. 2006) (reversing conviction because "the entire loss caused by the fraudulent conduct was suffered by the title companies," and "the banks involved . . . were merely instrumentalities used to used to cash legitimate checks written by the title companies"); United States v. Laljie, 184 F.3d 180, 191 (2d Cir. 1999) (similar).

To summarize: assuming that the cases which remark that the prosecution must prove that a "bank was victimized or exposed to a risk of loss by the scheme to defraud" to obtain a conviction under § 1344 correctly reflect the current state of a law,[5] those

---

[5]The court notes that the Supreme Court's ruling in Loughrin may create some doubt as to the continuing validity of the entire line of case law holding that a conviction under § 1344 requires proof that a bank was victimized or exposed to a risk of loss by the defendant's scheme (at least insofar as that case law suggests that the defendant's intent to defraud a bank is an element of the crime defined by § 1344(2), a suggestion Loughrin rejected). Because Adekoya misreads that case law in any event, as just discussed at length, the court does not consider here Loughrin's effect on them. It is similarly unnecessary to determine whether the "risk of loss" analysis applies to bank fraud charges brought under § 1344(1), those brought under     § 1344(2), or those brought under either subsection of the statue, an issue on which the cases are not unanimous.

cases require only that the scheme to defraud, whether or not it is actually capable of success, would victimize a bank or expose it to risk of loss. It is well-established in the case law that this requirement is satisfied where, as here, the defendant's scheme involves fraudulently withdrawing funds from the accounts of innocent depositors, as the bank may ultimately bear those losses (either in the form of civil liability or through a practice of reimbursing customers for the withdrawn funds). See, e.g., United States v. Miller-Douglas, 146 Fed. Appx. 576, 581 & n.6 (3d Cir. 2005); United States v. Bonallo, 858 F.2d 1427, 1434 n.9 (9th Cir. 1988). Adekoya's Rule 29 motion is accordingly denied.

## III. Conclusion

For the foregoing reasons, the defendant's oral motion for a judgment of acquittal is DENIED.

**SO ORDERED.**

_/s/ Joe Laplante_
Joseph N. Laplante
United States District Judge

Dated: March 2, 2015

cc:  Arnold H. Huftalen, Esq.
     Theodore M. Lothstein, Esq.